IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PRAETORIAN INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No.: 4:06-cv-1550-RBP |
| ) | |
| **SNL DISTRIBUTION SERVICES** ) | |
| **CORPORATION AND ACE** ) | |
| **AMERICAN INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants** ) | |

MEMORANDUM OPINION

This cause comes on to be heard upon Praetorian Insurance Company's[1] ("Praetorian") September 18, 2006 Motion to Disqualify the law firm of Drew, Eckl & Farnham LLP ("DEF"), Counsel to Defendant ACE American Insurance Company ("ACE"), on the grounds that a member of the firm has a conflict of interest.

FACTS AND PROCEDURAL HISTORY[2]

This case arises out of the settlement of an earlier case, filed in September 2005 in the Circuit Court of Tallapoosa County, Alabama,[3] *Bearden v. Personnel Staffing Inc.* ("PSI"), *et al.*, (CV-2005-199), which concerned the death of an SNL Distribution Services[4] ("SNL") employee in a traffic accident. In *Bearden*, PSI was sued on behalf of the deceased employee. SNL was

---

[1] Praetorian is also known as the "Insurance Corporation of Hannover."

[2] These "facts" are gleaned from the affidavit of Wray Eckl, appended to ACE's Response to Praetorian's Motion to Disqualify, and from Praetorian's original complaint. Praetorian has filed no statement of facts as to the background of the *Bearden* lawsuit in connection with the instant motion. The court will note all factual disputes.

[3] ACE lists the venue for the *Bearden* action as the Circuit Court of Calhoun County, Alabama.

[4] SNL is a trucking company.

not a named defendant in that suit, but PSI and SNL had an indemnity agreement that PSI claimed required SNL to indemnify it against the claims raised in the *Bearden* lawsuit. Praetorian, the insurance provider for PSI,[5] investigated the accident, and refused, in November 2005, to indemnify or defend PSI.[6]   In January 2006, SNL notified ACE of the *Bearden* suit. ACE, the umbrella insurer of SNL, denied any coverage obligation to PSI regarding the accident that led to the *Bearden* lawsuit. It was at this point that DEF became involved in the litigation as counsel for ACE. Upon doing so, it engaged in a conflict check that apparently revealed no conflicts of interest.[7] DEF proceeded in its representation of ACE, requesting information on claims and coverage from all interested parties[8] and preparing for a mediation session to be convened on June 23, 2006. Praetorian claims that Roger Thibodeaux, a Praetorian attorney, informed Wray Eckl of the conflict at this mediation session. ACE, through an affidavit filed by Eckl, disputes that Thibodeaux alerted Eckl to any potential conflict.[9] The *Bearden* lawsuit was

---

[5] PSI is a company that coordinates the assignment of employees seeking part-time employment to employers offering such opportunities.

[6] ACE claims that, after denying coverage, Praetorian "had no known active or visible presence in this case at the time Drew, Eckl, & Franham became involved in the action representing ACE." The court notes that it obviously had a potential "presence."

[7] ACE claims that the DEF conflict check did not turn up the possible conflict with Praetorian because Praetorian had denied coverage and was not an active participant in the *Bearden* lawsuit.

[8] ACE claims that it did not receive copies of Praetorian's commercial automobile/umbrella policy for PSI until June 15, 2006, and only then after "numerous requests" to PSI. ACE does not specify when it began making these requests. The timeline of the case suggests that the earliest that these requests could have begun was January or February 2006. The court notes that if "numerous requests" were made, this suggests that ACE knew that Praetorian was involved. In any case, ACE does not expressly state that this purported delay is the reason its conflict check did not flag the Praetorian conflict.

[9] The Eckl affidavit, however, goes on to state that he was "not aware that Praetorian had a potential stake in the lawsuit until shortly before the June 23, 2006 mediation." ACE's position is that, although it is unclear as to when Praetorian learned of DEF's involvement, it is clear that they knew before the mediation and "remained silent." ACE apparently also knew of Praetorian's involvement.

settled on August 6, 2006.[10]

The instant motion arises from Praetorian's Complaint for Declaratory Judgment filed in this court on August 7, 2006 to determine "the rights, obligations, and liabilities of all parties in this case with respect to any and all costs that have been or will be incurred in defense and/or indemnity of PSI in the *Bearden* lawsuit."[11] The instant motion was filed on September 18, 2006, and seeks to disqualify DEF attorney Erica Parsons due to the fact that another member of her law firm, Wray Eckl, has a long-standing and currently existing attorney-client relationship with Praetorian. Ms. Parsons' motion to withdraw as counsel was granted by this court on September 26, 2006, and Wray Eckl was admitted to appear *pro hac vice* in this cause on September 28, 2006.[12]

## MOTION TO DISQUALIFY STANDARD

Attorneys practicing in the United States District Court for the Northern District of Alabama are subject to the court's local rules.[13] Local Rule 83.1 provides that each attorney admitted to practice in this court or appearing *pro hac vice* is

> *required to be familiar with, and shall be governed by*, the Local Rules of this court and, to the extent not inconsistent with the preceding, *the Alabama Rules of Professional Conduct adopted by the Alabama Supreme Court* and, to the extent not inconsistent

---

[10] In July 2006, before the *Bearden* case was settled, Praetorian filed a Complaint for Declaratory Judgment in the Circuit Court of Jefferson County, Alabama, against PSI, SNL, and ACE. ACE notes that Praetorian did not seek disqualification of DEF when it filed that declaratory judgment action, which it voluntarily dismissed after the *Bearden* settlement.

[11] Praetorian seeks further relief in its complaint, the full articulation of which is not germane to the instant motion.

[12] In admitting Eckl, this court did not consider the disqualification issue.

[13] *See Herrmann v. Guttergard, Inc.*, 2006 WL 2591878, *6 (11th Cir. 2006)(per curiam)(unpublished opinion)("Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear...Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties")(internal citations omitted).

>with the preceding, the American Bar Association Model Rules of Professional Conduct, except Rule 3.8(f) thereof. *Acts and omissions by any such attorney which violate such standards, individually or in concert with any other persons, shall constitute misconduct*, whether or not occurring in the course of an attorney-client relationship, and shall be grounds for discipline, as shall the commission by an attorney of any serious crime. Discipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case, ineligibility for appointment as court-appointed counsel, ineligibility to appear under subsections (b) and ©, monetary sanctions, or any other sanction the court may deem appropriate" (emphasis added).

District courts, in analyzing a motion to disqualify predicated on allegedly unethical conduct, must "rest their disqualification decisions on the violation of specific Rules of Professional Conduct." *Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). The district court must "clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* This court therefore looks to the Alabama Rules of Professional Conduct ("ARPC"), as adopted by the Alabama Supreme Court, to inform its analysis of a motion to disqualify counsel. Rule 1.7 is the general ARPC provision governing conflicts of interest. It states:

>(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>>(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>(2) each client consents after consultation.
>
>(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>>(1) the lawyer reasonably believes the representation will not be adversely affected; and
>>(2) the client consents after consultation.  When representation of multiple clients in a single matter is undertaken, then consultation shall include explanation of the common representation and the

advantages and risks involved.

The official comment to this rule states that paragraph (a) stands for the proposition that "a lawyer ordinarily may not act as an advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated," a possible exception being an allowance for simultaneous representation in "unrelated matters or clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients."  The comment also notes that a client "may consent to representation notwithstanding a conflict," but when more than one client is involved, "the question of conflict must be resolved as to each client."

ARPC 1.9 governs situations when a lawyer attempts to represent a new client against a former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

ARPC 1.10 imputes a lawyer's conflicts to members of his or her firm.  *See* 1.10(a)("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8©, 1.9 or 2.2").  And ARPC 1.8(b) mandates that a lawyer "shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted under Rule 1.6 or Rule 3.3."

The party bringing a motion to disqualify "bears the burden of proving the grounds for disqualification. 'Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist.'" *Herrmann*, supra n.13, *6. A disqualification order 'is a harsh sanction, often working substantial hardship on the client' and should therefore 'be resorted to sparingly.'" *Id.* "The moving party has to show more than the mere fact that as a result of former representation, the attorney has knowledge of the moving party's practices and procedures. The moving party must have actual knowledge of the particular practices and procedures which are the subject matter of [the] suit." *Id.*, citing *Duncan v. Merrill Lynch*, *Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1032 (5th Cir. Unit B 1981). *See also Ex parte Tiffin*, 879 So. 2d 1160, 1164 (Ala. 2003)("The party moving for an attorney's disqualification under Rule 1.7 or Rule 1.9 bears the burden of proving the existence of a conflict of interest").

The Alabama Supreme Court outlined the elements for disqualification of counsel for a conflict of interest in *Ex parte Intergraph Corp.*, 670 So. 2d 858, 860 (Ala. 1995)(per curiam), holding that "the former client must show that he or she had an attorney-client relationship with the attorney the former client seeks to disqualify and that the attorney represented the former client in a substantially related matter [...] One should file a motion to disqualify within a reasonable time after discovering the facts constituting the basis for the motion."[14]

---

[14] "At a minimum, a party seeking disqualification for the conflict addressed in Rule 1.7 must demonstrate (1) that it is a current client of the lawyer whose representation is challenged, and (2) that the party's interests 'conflict' with the interests of the other client, or with the interests of the lawyer. *See Ex parte AmSouth Bank, N.A.*, 589 So. 2d 715, 718 (Ala. 1991). A former client seeking disqualification for the conflict addressed in Rule 1.9 must demonstrate (1) that it 'had an attorney-client relationship with the attorney the former client seeks to disqualify and [(2)] that the attorney represented the former client in a [(3)] substantially related matter.'" *Ex parte Tiffin*, 879 So. 2d 1160, 1164-1165 (Ala. 2003), *citing Ex parte Intergraph Corp.*, 670 So. 2d at 860. *See also Ex parte Regions Bank*, 914 So. 2d 843 (Ala. 2005)(explaining what is meant by "substantially related" as used in 1.10(b)).

### ARGUMENTS[15]

**I.     Praetorian's Motion to Disqualify**

Praetorian alleges that DEF must be disqualified as counsel for ACE because of its "long history of representing Praetorian, during which it has consulted with and delivered legal advice to Praetorian in the areas of insurance defense and insurance coverage."[16] It claims that Eckl has personally represented Praetorian and/or its insureds in at least thirty-two causes, and that Eckl currently represents Praetorian in five active lawsuits - one as insurance coverage counsel, and four as insurance defense counsel for Praetorian and/or its insureds.[17] Additionally, Praetorian cites twenty-seven (27) additional matters handled by DEF for Praetorian, either as coverage counsel or defense counsel.[18]

Citing ARPC 1.7(a), Praetorian argues that Eckl's currently existing representation of Praetorian in five active lawsuits creates a conflict of interest, mandating his disqualification

---

[15] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

[16] Praetorian claims that it attempted to resolve this conflict issue without involving this court.  It has filed the declaration of Roger Thibodeaux, Praetorian Senior Claims Consultant, which states that Thibodeaux approached Eckl's law firm about the matter, only to be told that Eckl would prefer that the court be ultimate arbiter of the appropriateness of his representing ACE in this cause.

[17] Praetorian argues that not only is Eckl personally conflicted out of representing ACE, but that his law firm is as well.  Its position is that DEF could not avoid disqualification by walling off any particular attorneys who possess confidential information about Praetorian because, under ARPC 1.10(a), if one lawyer of a firm is disqualified, all are disqualified.  Praetorian further cites ALABAR GC 1995-07 ("presumption of shared confidences among firm members").

[18] In support of its allegations as to Eckl's legal representation of Praetorian, it has filed a "declaration" (made under penalty of perjury) from Richard Peterson, Program Manager for Berkley Risk Administrators Company LLC (third party claims administrator for Praetorian) to this effect.

absent each client's consent.[19]  Praetorian does not consent to the conflict.[20]  Praetorian also notes an opinion from the General Counsel of the Alabama State Bar stating that a lawyer retained by an insurance company to defend actions against its insureds represents both the insureds and the insurance company.  Since Eckl has served in such a capacity for Praetorian, this implicates other conflicts of interest with Eckl's attempted representation of ACE.

Praetorian concludes that, because Eckl currently represents Praetorian as coverage counsel in another matter (as well as several of Praetorian's insureds in pending litigation) and because Praetorian seeks money damages from ACE, this makes their interests directly adverse.  As such, pursuant to ARPC 1.10 and 1.7(a), neither DEF nor Eckl can defend ACE against Praetorian in the instant case while representing Praetorian in other cases when Praetorian objects to the representation.

## II.     ACE's Response

ACE contests Praetorian's Motion to Disqualify on the grounds that it has waived its right to do so because it knew of the alleged conflict for "many months" and unreasonably delayed in notifying DEF of its position.  In the interim, DEF devoted substantial time and resources to this cause, and ACE argues that it should not be denied its choice of counsel upon Praetorian's purportedly untimely disqualification motion.

Specifically, ACE claims that Praetorian knew of DEF's participation at least by June 23, 2006 and waited until September 19, 2006 to file its motion.  ACE argues that this nearly three-

---

[19] ARPC 1.7(a) requires, in addition to the consent of both clients, that the conflicted attorney must also "reasonably believe that the representation will not adversely affect the relationship with the other client."  ACE made no overt statement as to Eckl's good faith belief that he could fulfill this requirement, and Praetorian did not address the issue in any of its filings with the court.

[20] Praetorian also cites ALABAR GC Opinion 1990-03 for the principle that conflicts over representation should be resolved in favor of the former client.

month delay constitutes Praetorian's waiver of its right to object pursuant to the conflict, and cites *Ex Parte Intergraph Corp.*, 670 So. 2d 858, 860 (Ala. 1995) (six months into discovery is not a "reasonable time" in which to file a motion to disqualify, thus defendant had "waived his right to challenge the attorney.")[21]

ACE further argues that, since this case arose out of the *Bearden* lawsuit, and "is, in essence, merely an extension of that lawsuit, then any objection Praetorian had" to DEF's involvement should have been "asserted within a reasonable time during the course of the *Bearden* lawsuit." ACE also note portions of the comments to ARPC 1.7, which discuss situations in which a lawyer may engage in representation adverse to another client:

> There are circumstances in which a lawyer may act as an advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consult upon representation...The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for declaratory judgment concerning statutory interpretation.

ACE submits that DEF's "direct representation of Praetorian in a few other matters" is "wholly unrelated to [DEF's] representation of ACE in this 'declaratory judgment [action] concerning statutory [and contract] interpretation.'" As such, it is a "waiveable" conflict within the meaning of above-cited "enterprise with diverse operations" commentary – "precisely the type of waiveable conflict contemplated by Rule 1.7."

---

[21]ACE also cites the following cases to buttress its argument: *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) ("A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed"); *and Cherry v. Coast House*, 359 S.E. 2d 904 (Ga. App. 1987)(the right to counsel "is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution"). Praetorian notes that the *Cox* case was decided in 1988, before the Alabama Supreme Court enacted current ARCP 1.7.

**III.     Praetorian's Reply**

In response to ACE's unreasonable delay argument, Praetorian argues that there was no meaningful delay because 1) it timely notified Eckl at the June 23, 2006 mediation after it discovered the conflict, and 2) Praetorian filed the Motion to Disqualify at the beginning of the litigation, even before ACE filed a responsive pleading.[22]  Praetorian also argues that ACE will not be unduly prejudiced if Eckl is disqualified because it will still be represented by its other counsel, Charles K. Hamilton of Bainbridge, Mims, Rogers, & Smith, LLP.[23]

   **A.     Praetorian notified ACE of the conflict in a timely fashion**.

In response to Eckl's claim that Praetorian "failed to mention" concerns about a conflict, Praetorian notes that, in the affidavit appended to ACE's response, Eckl states that an attorney for Praetorian "at mediation [on June 23, 2006, only a matter of days after Praetorian became aware of the conflict] did say to me that he thought I had a conflict."  After this, "Eckl did not consult with Praetorian and seek its consent to represent an adverse party."

Praetorian also notes that Thibodeaux contacted Hall McKinley of DEF in July 2006 and expressed his concerns about the Eckl conflict.  After multiple conversations, Thibodeaux was apparently told that ACE "may want the court to decide any issue on [Eckl's] involvement in the case."

Praetorian argues that it notified ACE of the conflict in a timely fashion because it raised the issue with Eckl within two or three days after first discovering it that it existed, continued to engage in dialogue with DEF on the issue through the month of August 2006 before finally filing

---

[22] As of the date of this memorandum opinion, ACE still has yet to file an answer.

[23] Praetorian again notes that ARPC 1.7(a) requires both clients consent to a conflict.  It reiterates that Praetorian has not consented, nor was it even asked to do so.

the instant motion "in the first available forum" on September 18.[24]

### B.     Praetorian filed the Motion to Disqualify in a timely fashion.

Praetorian contests ACE's argument that this cause is but an extension of the *Bearden* lawsuit.  It argues that its motion to disqualify was timely filed because it informed Eckl as soon as it was aware of the conflict, and then attempted to resolve the issue without involving this court.  Praetorian characterizes ACE's argument as tantamount to asking this court to punish Praetorian for attempting to resolve this clear conflict of interest informally instead of through the court system.

Since neither Praetorian nor ACE was a party to *Bearden*, Praetorian argues that it had no standing until now to contest Eckl's representation of ACE, stating specifically that "Eckl fails to explain how or on what basis Praetorian could have asked the Circuit Court of Jefferson County, Alabama to disqualify a Georgia law firm in litigation where the firm had not yet appeared." Praetorian also argues that, until Eckl's notice of appearance was filed on September 28, 2006, it did not know whether or not Eckl would actually follow through with his plan to attempt to represent ACE.

Praetorian further argues that ACE's citation of *Ex parte Intergraph* to buttress its argument that Praetorian's Motion to Disqualify was not timely filed is not apt.  It argues that *Intergraph* is distinguishable because, in that case, the party moved to disqualify counsel six months after the lawsuit was filed, when the parties were deeply engaged in discovery and in preparing the case for trial.  Praetorian argues that the instant situation is different because it

---

[24] Praetorian's position is that since neither ACE nor Praetorian was a party to the *Bearden* suit, it did not have a forum in which to file an objection during the pendency of that action.  This goes to Eckl's argument that Praetorian should have raised the conflict issue during the pendency of *Bearden*, as well as his claim that his and DEF's presence was visible for months, unlike Praetorian's.

discovered Eckl's conflict 2-3 days prior to mediation and informed Eckl at that mediation. After further informal attempts to resolve the issue, Praetorian filed its disqualification motion on September 18, 2006 - before ACE even filed its first responsive pleading and just three weeks after Eckl filed his notice of appearance.  Praetorian characterizes *Intergraph* as standing for the proposition that a conflict of interest issue must be raised "within a reasonable time after discovering the facts constituting [the conflict of interest]".  670 So. 2d at 860.  Because it argues that it met this standard, Praetorian maintains that *Intergraph* is inapposite to this case.

In reply to ACE's "enterprise with diverse operations" argument, Praetorian states that even if the facts of the instant case comport with this argument, such adverse representation is only permitted under ARPC 1.7 if both clients consent to the conflict.  Praetorian has not consented.

## CONCLUSIONS OF THE COURT

This court concludes that DEF and Wray Eckl are disqualified to represent ACE.  Their continued representation would be in clear violation of ARPC 1.7.  There has been no waiver.

The Motion to Disqualify will be **GRANTED**.  Praetorian will submit a proposed order within ten (10) days.

This the 21st day of November, 2006.

							_____
							**ROBERT B. PROPST**
							**SENIOR UNITED STATES DISTRICT JUDGE**